

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
AUG 28 2023
ARTHUR JOHNSTON
BY_____ DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Respondent, | § | CASE NO. 3:17-CR-141-WHB-FKB-001 |
| v. | § | |
| DEONTE TERRELL PROCTOR, | § | Honorable Judge Presiding |
| Petitioner. | § | Judge Barbour |

MEMORANDUM WITH ADDITIONAL EXTRAORDINARY AND COMPELLING
REASONS TO SUPPORT ATTACHED MOTION FOR A REDUCTION OF SENTENCE
PURSUANT TO THE FIRST STEP ACT AND 18 U.S.C. § 3582(c)(1)(A)

COMES NOW, Petitioner, Deonte Terrell Proctor (" Proctor "), acting in pro per (pro se), HEREBY SUBMITS this Memorandum with additional extraordinary and compelling reasons to support the attached First Step Act Motion For a Reduction of Sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A). Mr. Proctor further prays that this Court does construe his pleasings liberally in light of Haines v. Kerner, 404 U.S. 519, 520-21 (1972)(holding that, "pro se litigants are to be held to a lesser standard of review than lawyers who are formerly trained in the law, and are entitled to a liberal construction of their pleadings."

ARGUMENT

I. ADDITIONAL EXTRAORDINARY AND COMPELLING REASONS -

1. HAD PROCTOR BEEN SENTENCED TO DAY, HIS SENTENCE WOULD BE DRAMATICALLY LESS/LOWER -

In a recent ruling in the Supreme Court in Concepcion v. U.S., the Supreme Court held that (1) the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence; (2) because district courts must consider nonfrivolous arguments presented by the parties, the First Step

Act requires district courts to consider intervening changes when parties raise them; and (3) district courts ruling on First Step Act Motions bear the standard obligation to explain their decisions, and accordingly must give a brief statement of reasons to demonstrate that they considered the parties' arguments including arguments pertaining to intervening changes in law or fact.

2. FINALITY OF JUDGMENTS CANNOT TRUMP FUNDAMENTAL FAIRNESS -

The legal system has a strong interest in the finality of judgments. Whether the court findings did not constitute a 195-month sentence or that there was some error by the court in sentencing Proctor to a 195-month term of imprisonment, both equally qualify as extraordinary and compelling reason for a sentence reduction. Now with the Supreme Court ruling in Concepcion and the US Sentencing Commission's amendment to § 1B1.13, a change in law is an extraordinary and compelling reason to GRANT Proctor a sentence reduction. Proctor's case is far from typical, and this vehicle that Proctor relies upon for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), is a statute whose very purpose is to reopen final judgments. Cf. Concepcion v. U.S., 142 S.Ct. 2389, 2399 n.3 (2022)("No one doubts the importance of finality [of criminal judgments]. Here, however, the Supreme Court interprets a statute whose very purpose is to reopen final judgments.") see also U.S. v. Trenkler, 47 F.4th 42, 48 (1st Cir. 2022)("Compassionate release is a narrow exception to the general rule of finality in sentencing.")

3. TODAY PROCTOR WOULD NOT BE SENTENCED AS AN ARMED CAREER CRIMINAL UNDER 18 U.S.C. § 924(e) -

At Proctor's sentencing, the Probation Department had calculated and determined that a § 924(e) enhancement under the Armed Career Criminal Act ("ACCA") qualified Proctor to be sentenced under. This resulted in Proctor's minimum/maximum of 0 to 10-years be enhanced to 15-years mandi-

tory minimum, resulting in a 195-month term of imprisonment.

Three prior State of Mississippi drug convictions were used to enhance Proctor's sentence. The court had determined that those three prior drug convictions were three separate drug convictions. However, in a recent ruling in the Supreme Court in Wooden v. U.S., 142 S.Ct. 1063 (2022), the Supreme Court clarified in Wooden that multiple crimes committed during a "single criminal episode" only counts as "one conviction for purposes of the ACCA § 924(e) enhancement." Wooden is now an intervening change in law or fact that effects Proctor's case (where crimes within a spree, like Proctor's prior convictions, do not count as separate ACCA predicate offenses because of the statutory language.) In Proctor's case, Proctor had three State of Mississippi drug convictions for sale of cocaine in Hinds County Circuit Court, Jackson, Mississippi. The facts of each sale of cocaine all mirror each sale, are all in a sequential crime spree and in a single criminal episode. Proctor met with the same CI, who purchased the same drug, with approximately the same area of weight, and in a sequential weekly meeting dating April 8, 2009, April 14, 2009 and then April 20, 2009. Under the "occasions clause" - sequential crimes can occur on one occasion and, if the federal criminal statute is grievously ambiguous, then the statute should be interpreted in the defendant's favor. See Ocasio v. U.S., 578 U.S. 282, 295, n.8 (2016). The origin of the "occasions clause" confirms that multiple crimes, like Proctor's, may occur on one occasion even if not at the same moment. Proctor's sale of cocaine to the same CI were all part and parcel of the same scheme, actuated by the same motive and accomplished by the same means. (i.e., same scheme - meet with C.I. / same motive - sell cocaine / same means - make profit). There was no intervening arrest between each occasion that Proctor met the CI. The state prosecutor charged Proctor with three separate charges, indicting

Proctor on the same date (April 20, 2009), sentenced all together and ran concurrent with each other (October 26, 2009), demonstrates that although they are multiple convictions, they all equate to only one occasion or one single criminal episode. It was Proctor's three sales of Cocaine to the CI every week (once a week) - a continuous criminal activity exploiting a common opportunity from a single episode.

Proctor objected at sentencing and on <u>Direct Appeal</u>, including asking the <u>Fifth Circuit</u> to stay the <u>Appeal</u> until after the ruling of <u>Wooden</u> in the <u>Supreme Court</u>. However, the court would not stay Proctor's <u>Appeal</u> and the court affirmed the district court's sentence.

Today, Proctor would not be enhanced under the <u>ACCA</u> because his three prior cocaine sales only count as one single criminal episode in light of the <u>Supreme Court</u> ruling in <u>Wooden</u>. This extraordinary and compelling reason warrants Proctor a sentence reduction due to now only having one drug conviction (not three) for purposes of the <u>ACCA</u>. Today, Proctor would be facing a minimum/maximum sentence of <u>0 to 10-years</u> under <u>18 U.S.C. § 922(g)</u> as opposed to his original sentence under <u>§ 924(e)</u> and facing a mandatory <u>15-years</u> and a sentence of <u>195-months</u>.

4. **INTERVENING CHANGE OF LAW - SUPREME COURT RULING IN REHAIF v. U.S., 139 S.CT. 2191 (2019) -**

In <u>Rehaif v. U.S.</u>, 2191 (2019) the <u>Supreme Court</u> made a substantive ruling that is now an intervening change in law for purposes of the <u>First Step Act's Motion For a Reduction of Sentence</u> under <u>18 U.S.C. § 3582 (c)(1)(A)</u> based on extraordinary and compelling reasons. The following makes Proctor's case now extraordinary and compelling with <u>Rehaif issues</u> that would have severe impact on his case if he was sentenced today:

## A. AFTER NOT RECEIVING REAL NOTICE OF THE TRUE NATURE OF THE CHARGE AGAINST HIM, HIS PLEA TODAY WOULD NOT BE VOLUNTARY IN LIGHT OF AN INTERVENING CHANGE IN LAW IN THE SUPREME COURT'S RULING IN REHAIF-RESULTING IN AN EXTRAORDINARY AND COMPELLING REASON TO WARRANT A SENTENCE REDUCTION -

Because Rehaif announced a new substantive rule that "narrow[s] the scope of a criminal statute by interpreting its terms," Schriro v. Summerlin, 542 U.S. 348, 351 (2004), would likely impact Proctor's case because he pled guilty to one count of Felon in Possession of a Firearm, after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1), without being informed, as required by Rehaif, that an element of his offense was that he knew his prohibited status at the time "he possessed the firearm."

Because Proctor did not receive "real notice of the true nature of the charge(s) against him," (Henderson v. Morgan, 426 US 637, 645-46 (1976)), Proctor's plea could be involuntary; see also U.S. v. Dominguez-Benitez, 542 U.S. 74, n. 10 (2004)(where the Supreme Court also recognized that a conviction based on a constitutionally invalid plea of guilty cannot be saved "even by overwhelming evidence that the defendant would have pleaded guilty regardless.")

The extraordinary and compelling reason that warrants Proctor a reduction of his sentence is that today Proctor's conviction would be a structural error by the court (where the feature of a structural error is that it "affect[s] the framework within which the trial proceeds," rather than being simply an error in the trial process itself.) see Weaver, 137 S.Ct. at 1907-08. In Proctor's case, those structural erros would have included (1) the fundamental legal principle that he must be "allowed to make his own choices about the proper way to protect his own liberty." see McCoy, 138 S.Ct. at 1511 (where the right at issue is not designed to protect Proctor from erroneous conviction

- 5 -

but instead protects some other interest); (2) in Proctor's case, error would be deemed structural because the effect of the error would be simply too hard to measure - i.e., where the "precise effect of the violation could not be ascertained.") see McCoy, 138 S.Ct. at 1511; (3) finally, because Proctor's case would result in fundamental unfairness, it would be deemed structural-in error; Proctor meets all rationale because (1) in accepting Proctor's guilty plea after misinforming him of the nature of the offense with which he was charged, the court deprived Proctor of his right to determine the best way to protect his liberty; (2) the court deprived Proctor autonomy interest under the Fifth Amendment's due process clause, causing consequences that were necessarily unquantifiable and indeterminate, rendering the impact of the of the court's error simply too difficult to measure; and (3) because Mr. Proctor was convicted of a crime based on a constitutionally invalid guilty plea, resulted in fundamental unfairness. THEREFORE, the extraordinary and compelling reason that warrants Proctor a sentence reduction to time served is warranted, because today Proctor's substantial rights were violated based on a court error that [seriously affected] the fairness, integrity or public reputation of judicial proceedings (where today Proctor's life and liberty were at stake, the district court's error in accepting a guilty plea without giving notice of an element of the offense violates Mr. Proctor's Fifth Amendment DUE PROCESS RIGHTS, casting doubt on the integrity of the judicial process.)

Mr. Proctor's constitutionally invalid guilty plea seriously affects the fairness, integrity or public reputation of judicial proceedings warranting an extraordinary and compelling reason to reduce Mr. Proctor's sentence to time served. U.S. v. Donovan Hall, No. 18-2023 U.S. App. LEXIS 13702 (6th Cir. 6/2/2023); Seabrooks v. U.S., Case No. 20-13459, 2022 U.S. App. LEXIS 12322 (11th Cir. 5/6/2022); U.S. v.

Michael Gary, No. 18-4578 (4th Cir. 2020); U.S. v. Lockhart, No. 16-4441 (4th Cir. 1/10/2020; U.S. v. Thomas Waters, 2023 U.S. App. LEXIS 7558 (4th Cir. 5/30/2023); U.S. v. Kelley, 40 F.4th 250, 252-53 (5th Cir. 2022); Baker v. U.S., 848 Fed. Appx. 188, 189-90 (6th Cir. 2021).

This extraordinary and compelling reason now warrants a reduction of his sentence based on an intervening retroactive change in law that raises Rehaif issues with Proctor's case that now would make a full impact today on his conviction and sentence.

5. JAIL TIME CREDIT

Proctor's Federal Sentence imposed and his state sentence imposed created extraordinary circumstances regarding his credit for time served. This unusual circumstance creates an extraordinary and compelling reason enough to ensure the original intent that existed in this court. See U.S. v. Lorenzo McCray, 2021 U.S. Dist. LEXIS 234581 (E.D. Mich. 12/7/2021)(where the BOP calculated McCray's release date four years above the amount of time he was sentenced to in Federal Court.)

Proctor was sentenced to 195 month term of imprisonment. Proctor was arrested on December 2, 2016 and then indicted by the U.S. District Court - Southern District on November 28, 2017. While in Federal Custody, Proctor was also facing a state probation/parole revocation and violation. Upon being sentenced by the US District Court, on October 16, 2018, Proctor was returned back to the State on October 26, 2018, and placed in the State Prison due to his violation. On September 18, 2019, Proctor was released from the State and transferred by the US Marshal's and placed in Federal Custody.

Because this Court failed to specify whether or not Proctor's Federal Sentence was ran concurrent or consecutive with any state sentence, the Bureau of Prisons' denied Proctor any jail time credits, which would include the time period between December 14, 2017 thru to October 26,

2018. See Exhibit 5 - Jail Time Credit. Proctor's release date is July 7, 2033. Proctor would be eligible for credit from his Indictment date (November 28, 2017 up and through to October 26, 2018), in which, when calculated, would be approximately 11-months. Because the BOP will not allow any jail time credits, and then factoring in from the Indictment date November 28, 2017, Proctor's 195-month sentence would result in a release date of October 24, 2030 (approx. - when calculating in good time credits, etc.) This now means that Proctor will be serving a 221-month sentence as opposed to the court's original intent of a 195-month sentence (an addittional 26 months). See U.S.S.G. § 5G1.3(b) ("an extraordinary and compelling reason that warrants a sentence reduction."); U.S. v. Bickens, 2021 U.S. App. LEXIS 332 62 (5th Cir. 2021); see also Setser v. U.S., 607 F.3d 128, 132-33 (5th Cir. 2012), 566 U.S. 231, 236 (S.Ct. 2012)("[w]here a federal sentence was imposed before a state sentence [like Proctor's], the BOP may grant a NUNC PRO TUNC DESIGNATION.") The Supreme Court also made it clear in Setser, that the sentencing courts have the inherent authority to order a federal sentence to be served either concurrently or consecutively to a state sentence to be imposed. Setser, 566 U.S. at 235-236.

Because this court was silent in the matter of concurrent and/or consecutive, this an extraordinary and compelling reason to warrant a reduction based on 1) the BOP's failure to allow Proctor any credit for jail time served; 2) under § 5G1.3 Proctor would be eligible; and 3) the extraordinary and compelling reason to ensure the court's original intent of a 195-month sentence and consistent with the § 3553(a) factors, is to GRANT a reduction of his sentence 11 months that would include from his Indictment date up and through to his return back to the State prison, resulting in an approximate release date of 1/2030 as opposed to 7/22/2033, all in the interest of justice pursuant to § 5G1.3(b); see also

- 8 -

U.S. v. Onzures, 2022 U.S. Dist. LEXIS 4971 (Dist. Conn. 1/11/2022); U.S. v. Caban, 2021 U.S. Dist. LEXIS 198672 (S.D. NY 2021)(Note that Proctor did attempt his exhaustion remedy to only be denied by both his Counselor, Case Manager, and <u>Grand Prairie's Computation Center</u>. <u>See</u> <u>Exhibit 5.</u>

>   6. <u>Extraordinary And Compelling Reasons Exist When An Agent Who Was Part of Proctor's Investigation/Arrest, Was Later Convicted For Murder And Misconduct, Questions Now Whether Or Not Same Agent Fabricated Some Of The Evidence - Namely, The Firearm -</u>

Anthony Fox, a former police officer and former detective for the Jackson Police Department was sentenced to <u>20-years</u> for the beating to
      [murder]
death a suspect (George Robinson - <u>62-years old</u>) resulting in a culpable negligence manslaughter. The sentencing judge suspended <u>15-years</u> and sentenced Fox to five years. The death was ruled a homicide by blunt-force trauma. This same agent/detective Anthony Fox was the same detective that was involved in Proctor's arrest. In fact, it was Fox who allegedly found the firearm to use against Proctor. Fox was convicted by a jury on August 4, 2022 and then sentenced two weeks later.

An extraordinary and compelling reason now exists that questions whether or not there was foul play or misconduct in Proctor's case or the night of Proctor's arrest. As a detective for the Jackson Police Department, Agent Fox had prior history in fabricating his statements during several arrests. <u>See</u> <u>Walter Maberry, II</u>, 2016 U.S. Dist. LEXIS 193 F.Supp.3d 729 (where Fox during a traffic "<u>TERRY</u>" stop, fabricated the K-9 Alpha dog movements during a search, resulting in a Motion To Suppress the illegal search and seizure of both the vehicle and Maberry's resident being granted and all evidence recovered excluded.)

Further there is a history with Proctor's brothers and Agent Fox, which have resulted in meaningless threats and intimidation. It is well known that there are those Police Departments with an accountability

and those that abuse their power. With a history between Agent Fox and Proctor's brothers, there has always been a vendetta between him and them. His actions clearly show with previous or prior fabricated misconduct and/or abusive behavior that resulted in wrongful arrests and now murder of a suspect in a case Fox was working on. This extraordinary and compelling reason now warrants a full review and whether or not Fox's actions could possibly have also happened when Agent Fox allegedly found a weapon that was located that Fox used to implicate Proctor in his arrest. A reduction of Proctor's sentence would be warranted with some type of relief based on an Agent's history of prior misconduct and now a murder conviction for abuse of power in the beating to death of a murder suspect (a 62-year old man). See Exhibit 4 - Anthony Fox. See also U.S. v. McCoy, 981 F.3d 271, 281 --(4th Cir. 2020)("[T]he very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is not a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction.") McCoy, 981 F.3d at 287. Because this would be a complex issue that would require the court to "EXPAND THE RECORD" to obtain all discovery of police reports regarding Proctor's arrest and those agents involved, namely agent Fox, in determining an extraordinary and compelling reason to GRANT RELIEF.

In Koon v. U.S., 518 U.S. 81, 113 (1996), the Supreme Court held that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individiual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." This admonishment and duty pertain at sentencing modification hearings as well. Pepper v. U.S., 562 U.S. 476, 490 (2011). Federal judges may conduct inquiries broad in scope, "largely unlimited either as to the kind of information s[h]e may consider, or the source from which it may come." U.S. v. Tucker, 4040 U.S. 443, 446 (1972). That discretion is not unfettered. U.S. v. Hunter, 12 F.4th at 562 (6th Cir. 2021). And although § 3582 does not define "extraordinary and compelling," courts must give those words their "ordinary meaning at the time Congress enacted the statute." Id. When Congress enacted § 3582, "extraordinary" meant "most unusual," "far from common," and "having little or no precedent" and "compelling" meant "forcing, impelling, driving." Id. Proctor's case and the circumstances in this case are far from common and are most unusual as outlined with Proctor's issues.

- 10 -

NOTE: See Exhibit 4 (where Proctor made numerous attempts to retrieve certain documents regarding Agent Fox through FOIA/PA under 5 U.S.C. § 552 and 5 U.S.C. § 552(a) but was unable to obtain those documents due to the fact that they were sealed during Fox's hearings. This Court may now obtain them to EXPAND THE RECORD for a review in Proctor's behalf.

THE § 3553(a) FACTORS NOW FAVOR PROCTOR -

(1) Nature of Proctor's Offense and Criminal History - 18 U.S.C. § 3553(a)(1) -

Proctor's conduct, while unquestionably subject to penalties under the Indictment Proctor was charged and convicted for, does not stand out from similar cases today that have received substantially lower sentences. See Sent'g Comm'n Data. Congress' clear intent was to allow courts a broader discretion to reduce long harsh sentences, like Proctor's because Congress determined that in passing the First Step Act of 2018, shorter periods of incarceration sufficiently reflect and account for the dangerous, high caliber nature of the crimes that those statutes now cover. FSA of 2018, Pub. L. No. 115-391, 132 Stat. 5194.

(2) Need For Sentence To Deter Future Conduct And Protect The Public - 18 U.S.C. § 3553(a)(2)(B)-(C) -

The objectives of deterrence and protection of the public, under § 3553(a)(2)(B)-(C), will not be served by Proctor's continued incarceration, for several reasons, including Proctor's post-conviction rehabilitation. See Pepper v. U.S., 562 U.S. 476, 491 (2011) (observing that post-conviction rehabilitation "may be highly relevant" to sentencing factors, especially § 3553(a)(1) and § 3553(a)(2)(B)-(C)).

This court now has the opportunity to see Proctor for the person that he is and has become. The PreSentence Report only told part of the story. And the transcripts of Proctor's sentencing hearing was equally as slim. Perhaps this is unsurprising because Proctor faced a 195-month imprisonment. Proctor has not incurred any convictions or

- 11 -

any infractions while he has been incarcerated these past 7-years. In fact, while most men would be crushed under the weight of serving a 195-month imprisonment, Proctor was different. Instead of acting out or approaching prison with a "what is the point" attitude, Proctor started his time in the Federal Bureau of Prisons ("BOP") by compiling an extraordinary record of rehabilitation. That record inludes a sterling clean prison conduct. With a flawless disciplinary record for Proctor is extraordinary, but what is most remarkable about this is the fact that Proctor's reform is entirely self-motivated and he has committed full-force to making constructive use of his time. Proctor was set against the dismal notion that he may never get relief, but with little to be "gained," Proctor has still made the right choices. As the Supreme Court, in Pepper v. U.S. explained, "evidence of post-sentencing rehabilitation provides the most up-to-date-picture of Proctor's history and characteristics and is the most accurate indicator of Proctor's true tendencies." Pepper, 562 U.S. at 492. Proctor's behavior and rehabilitative efforts, particularly facing a 195-month term with no hope, is in itself extraordinary.

Proctor has attached his Program Review in Exhibit 2 that shows 7-years of commendable progress and extraordinary post-sentencing rehabilitative efforts Proctor has participated in and successfully completed numerous courses offered through the BOP. See Exhibit 2. Proctor has remained close and in constant contact with a supportive family. Proctor has attached his Proposed Release Plans, including a home to be released to and immediate employment upon release (highly relevant to Proctor's post-incarceration risk to the public). His family will be a help-meet in Proctor's transition back into society. See attached Reference Letters - Exhibit 3. Having remained gainfully employed throughout these 7-years. Proctor has accumulated countless hours of apprenticeship to aid in his career that he will pursue upon

- 12 -

his release from prison. Having been heavily involved with his self-motivated plans and goals he has set for himself, Proctor has remained as an exemplar to both Staff and other inmates. For years during his incarceration, Proctor has grown spiritually with his relationship in his religious beliefs and faith in God. He has also became close and involved with his family in preparations to succeed upon release and with their help and support. The attached reference / support letters will share their honest feelings and opinions with Proctor, his true intentions of change, his goals, strengths, and positive intentions. Their references and/or support are significant in establishing that Proctor does not pose a threat or risk to society or his community. See Exhibit 3.

Finally, Proctor is now 38-years old and after 7-years of being locked away in prison, Proctor has aged and has a decreased risk of recidivism/reoffending due to his age. See U.S. Sent'g Comm'n - "The Effects of Aging on Recidivism Among Federal Offenders" 22 (2017).

The sincerity of Proctor's efforts, his commitment to learn and self-improvement, are made more manifest by the fact tha while undertaking these endless efforts these past 7-years, Proctor did so with no reason to ever expect any relief while imprisoned.

(3) The Need To Avoid Unwarranted Sentencing Disparities - 18 USC § 3553(a)(6) -

During these past seven years of Proctor's incarceration, Congress has now made it clear that district courts could view offense-and-criminal-history combinations, like Proctor's, through a more lenient lens, given the unjust nature of earlier sentencing schemes. Intervening changes in law and those defendants with similar criminal history and similar offense, show a gross disproportionate sentence in what is being handed down today and what sentence Proctor was imposed. Proctor has also aged

and made significant rehabilitative progress and effort these past seven years. Proctor's 19<u>5-month</u> sentence is harsh. There can be no credible argument that the sentence Proctor has already served of 7-years is lenient. Despite being sentenced to <u>195-months</u>, add into it the COVID-19 crisis that rendered Proctor's sentence "overly punitive" (where this FCC-Yazoo City Medium USP Facility was one of the only Federal Bureau of Prisons that were on a consistent lock-down status from March 20, 2020 up and through to just recently this year in June of 2023, caused by the pandemic, a severe shortage of Staff, inability to follow protocol and procedures for a pandemic as set by the Federal Bureau of Prisons and in line with the State of Mississippi and OSHA guidelines, need for medical staff, and failing their inspections by the Washington, D.C. General Counsel Office.) <u>See</u> <u>Exhibit 6 - Memo from Union Rep demanding help for this Facility from State Officials</u>; <u>see also</u> <u>U.S. v. Divine Johnson</u>, 2023 U.S. Dist. LEXIS 72896 (S.D. N.Y. 4/25/2023)(where Johnson's incarceration during the entirety of the pandemic has rendered his sentence overly punitive for harsh prison conditions, constituting extraordinary and compelling reasons that warrant relief); <u>see also</u> <u>U.S. v. Amerson</u>, 05-cr-0301 (JS)(E.D. NY 2023)(where "a day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-acentury deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison..."" particularly for defendants [like Proctor] who have (i) served long sentences, and (ii) been detained for the entirety of the pandemic.") Courts have been willing to conclude that "pandemic-induced conditions of confinement can constitute extraordinary and compelling reasons warranting a reduction of sentence or a compassionate release." <u>Id</u>. Combine Proctor's <u>195-month</u> sentence with the COVID -19 Crisis, together with his examplary prison conduct and rehabilitative efforts clearly demonstrate that his <u>195-month</u> sentence far exceeds what is sufficient but not greater than necessary to

meet the goals of § 3553(a). A reduced sentence to time served in Proctor's case would fulfill the mandate of § 3553(a)(where Proctor's sentence is discordant with modern standards of fairness); see generally U.S. v. Rosas, 2020 WL 722 6438, at *4 (S.D. Cal. 12/8/2020)(132-year sentence for six robberies was reduced to time served, below the manatory minimum, and noting a "growing consensus of district courts" THAT "unduly harsh" sentences constitutes an extraordinary and compelling basis to reduce.)

The sentence Proctor has already served sufficiently "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense." See 18 U.S.C. § 3553(a).

### U.S.S.G. Sentencing Comparison

| Proctor's Original Sentence | Today's Sentence FSA 2018 |
|---|---|
| ACCA Enhancement | No ACCA Enhancement - |
| 15-Year Mandatory Minimum | Minimum/Maximum 0 to 10 Years |
| Sentence | Sentence |
| 195-Months | |

### FISCAL YEAR 2020 MEDIAN HEINOUS CRIMES
(U.S. Sentencing Commission Statistical Information Packet)

| | | |
|---|---|---|
| Murder | - | 255 Months |
| Sexual Abuse | - | 210 Months |
| Kidnapping | - | 180 Months |
| Robbery | - | 110 Months |

(NOTE: Proctor's 195-month sentence is more than some of the most heinous crimes' median sentences and almost as long as sexual abuse and murder median sentences).

## II. CLOSING

In <u>Koon v. U.S.</u>, 518 U.S. 81, 113 (1996), the <u>Supreme Court</u> held thta "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." This admonishment and duty pertain at <u>sentencing modification</u> <u>hearings</u> as well. <u>Pepper v. U.S.</u>, 562 U.S. 476, 490 (2011). Federal judges may conduct inquiries broad in scope, "largely unlimited either as to the kind of information [s]he may consider or the source from which it may come." <u>U.S. v. Tucker</u>, 404 U.S. 443, 446 (1972). The circumstances of this case are far from common (extraordinary) and are most unusual (extraordinary). The issues raised are extraordinary and compelling reasons that warrant relief. Each circumstance requires full review and one, an expansion of the record.

Based on the foregoing, in combination with the <u>§ 3553(a) factors</u>, compassionate release and/or a reduction of sentence was designed for people like Proctor in mind. Proctor humbly requests it. Justice demands it. Keeping Proctor in custody or denying him a reduction of sentence is not only unnecessary, but contrary to the <u>§ 3553(a) factors</u>. Proctor now respectfully requests that this Court Grant this Motion, all in the interest of justice and prevent a fundamental miscarriage of justice.

EXECUTED and SIGNED on this \_\_\_\_\_day of August, 2023.

_____
Deonte Proctor
Affiant/Petitioner
In Pro Se

NOTE: At time of Proctor's filing the Supreme Court had ruled in New York State Rifle & Pistol Ass'n. Inc. v. Bruen, 142 S.Ct. 2111 (2022), establishing that the conduct underlying [Proctor's] conviction is constitutionally protected by the Second Amendment.

Further, Proctor's current Judge [Judge Reeves] in U.S. V. Jessie Bullock, 2023 U.S. Dist. LEXIS 112397 (S.D. Miss. 6/28/2023) questioned whether the Government demonstrated that as to Mr. Bullock, the federal felon-in-possession ban is consistent with America's "historical tradition of firearm regulation?" The government's brief in this case did not identify a "well-established and representative historical analogue" form either era supporting the categorical disarmament of tens of millsions of Americans who seek to keep firearms in their home for self-defense. Bruen, 142 S.Ct. 2111, 2132 (2022)(federal felon-inpossession ban was enacted in 1938, not 1791 or 1868 the years the Second and Fourteenth Amendments were ratified.)

This would also raise an extraordinary and compelling reason for Proctor's case, in regards to the Second Amdnement and his right to bear arms.