**DEONTE TERRELL PROCTOR**,

*Petitioner*,

*v.*

**UNITED STATES OF AMERICA,**

*Respondent*.

CAUSE NO. 3:17-CR-141-CWR-ASH-1

## ORDER

Deonte Terrell Proctor petitions the Court for a sentence reduction, pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (the "First Step Act"). Docket No. 79. Mr. Proctor offers six reasons for a sentence reduction. He claims his sentence should be reduced because: (1) there have been intervening changes in applicable laws; (2) he is due unportioned jail time credit for time served during his prior state sentence; (3) the conviction of his arresting officer demonstrates the possibility of foul play in his case; (4) his conduct is not dissimilar from others who received substantially lower sentences; (5) experiencing the COVID-19-induced conditions at FCC Yazoo City Medium USP Facility render his sentence overly punitive; and (6) he has been rehabilitated. For the reasons expressed herein, Mr. Proctor's motion is denied.

### I.     Background

In 2018, Mr. Proctor pleaded guilty without the benefit of a plea agreement for violating 18 U.S.C. §§ 922(g) and 924(e)(1), being a felon in possession of a firearm. At that time, persons

who violated Section 922(g) typically received no more than ten years in prison,[1] but this penalty varies significantly depending on whether the Armed Career Criminal Act, 18 U.S.C. § 924(e), ("ACCA") applies. Under the ACCA, "a person who violates section 922(g)" who "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another" shall receive no less than fifteen years of imprisonment. 18 U.S.C. § 924(e)(1). The sentencing court determined that Mr. Proctor had three prerequisite convictions that triggered the ACCA enhancement. On October 26, 2018, Mr. Proctor was sentenced to 195 months in the Bureau of Prisons ("BOP") with three years of supervised release to follow, and a $1,500 fine.

Mr. Proctor has contested his sentence relentlessly. In 2019, he filed a series of motions for relief. *See* Motion to Set Aside Judgment, Docket No. 43; Motion to Vacate under 28 U.S.C. § 2255, Docket No. 49. On April 15, 2021, this Court denied Mr. Proctor's motions to vacate and set aside judgment. Docket No. 68. Mr. Proctor subsequently appealed his sentence to the Fifth Circuit, which denied his claims and found that the ACCA enhancement was properly applied. *United States v. Proctor*, No. 21-60318, 2021 WL 4898427 (5th Cir. Oct. 20, 2021); *see also* Docket No. 75. Mr. Proctor also filed a motion for compassionate release, citing his medical conditions that increased his risk of infection during the COVID-19 pandemic, Docket No. 63, but this motion too was denied. Docket No. 73.

This brings us to Mr. Proctor's current motion, which argues extraordinary and compelling reasons exist that warrant a sentence reduction.[2] Docket No. 79. The United States

---

[1] The penalty for violating 18 U.S.C. § 922(g) has since increased. *See* 18 U.S.C. § 924(a)(8) ("Whoever knowingly violates subsection (d) or (g) of section 922 shall be fined under this title, imprisoned for not more than 15 years, or both.").

[2] Mr. Proctor also filed a motion requesting the status of his motion for a sentence reduction. Docket No. 88.

disputes Mr. Proctor's arguments. After considering each of Mr. Proctor's arguments, the Court finds that he presents no extraordinary and compelling reasons for a sentence reduction.

## II.      Legal Standard

Mr. Proctor petitions the Court for compassionate release pursuant to § 3582(c)(1)(A). "[Section] 3582 imposes a single procedural requirement: A prisoner must first present his request for release to the Bureau of Prisons." *Fernandez v. United States*, 146 S. Ct. 1292, 1305 (2026). "A court, on a motion by the BOP [Bureau of Prisons] or by the defendant, after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if extraordinary and compelling reasons warrant such a reduction." *United States v. Chambliss*, 948 F.3d 691, 692 (5th Cir. 2020) (quotation marks and citation omitted).

"Before determining the extent of a reduction based on the § 3553(a) factors, a court must first ensure that a movant is part of the 'limited class of prisoners' who are 'eligibl[e]' for such a reduction." *Rutherford v. United States*, 146 S. Ct. 1320, 1333 (2026) (alteration in original) (quoting *Dillon v. United States*, 560 U.S. 817, 825, 827 (2010)). "And whether a prisoner is eligible depends on whether he can offer 'extraordinary and compelling' reasons that 'warrant' compassionate release, not on the § 3553(a) factors." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). "This gatekeeping requirement is . . . a distinct analytical step that imposes independent and ascertainable limits on access to compassionate release." *Id.*

"While the terms 'extraordinary' and 'compelling' leave room for judgment, they are not so flexible as to encompass any consideration." *Id.* at 1332. "Their meaning depends on context[.]" *Id.* "'Extraordinary' means 'most unusual,' 'far from common,' and 'having little or no precedent,'" while "'[c]ompelling' means 'tending to convince or convert by or as if by

forcefulness of evidence[.]'" *Fernandez*, 146 S. Ct. at 1302 (quoting Webster's Third New International Dictionary 807 (1976)).

"Congress has authorized the Sentencing Commission to issue policy statements about when compassionate release is warranted, and these policy statements shape whether courts may grant compassionate release motions." *Id.* at 1304 (internal citations omitted). These policies "provide four categories of 'extraordinary and compelling reasons' that could warrant a sentence reduction: (A) medical conditions; (B) age; (C) family circumstances; and (D) other reasons." *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021) (cleaned up) (quoting U.S. Sent'g Guidelines Manual, § 1B1.13 cmt. n.1(A)-(D) (U.S. Sent'g Comm'n Nov. 1, 2018)).

"Congress has [also] permitted the Sentencing Commission to treat a defendant's rehabilitation as a relevant consideration in granting compassionate release." *Fernandez*, 146 S. Ct. at 1303 (citing 28 U.S.C. § 994(t)). But "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason." *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021) (quoting 28 U.S.C. § 994(t)) (emphasis added); *see also Rutherford*, 146 S. Ct. at 1332.

**III.   Discussion**

The Government argues that this petition is improperly before the Court because Mr. Proctor has not exhausted his administrative remedies within the BOP. This argument is taken first. Then, the Court addresses the six reasons Mr. Proctor offers for a sentence reduction. Specifically, he claims his sentence should be reduced because: (1) there have been intervening changes in applicable laws; (2) he is due unportioned jail time credit for time served during his prior state sentence; (3) the conviction of his arresting officer demonstrates the possibility of foul play in his case; (4) his conduct is not dissimilar from others who received substantially

4

lower sentences; (5) experiencing the COVID-19-induced conditions at FCC Yazoo City Medium USP Facility render his sentence overly punitive; and (6) he has been rehabilitated. Because the Court does not find these reasons to be extraordinary and compelling, the Court does not need to reach the § 3553(a) factors.

### A. Mr. Proctor's Administrative Burden

As a procedural matter, the Government submits that Mr. Proctor has not met his sole requirement to exhaust remedies within the BOP. He has. "[A] prisoner has the option to file his motion in the district court upon the expiration of one of two events: (1) once he 'has fully exhausted all administrative rights to appeal . . . *or*' (2) after 'the lapse of 30 days from the receipt of such a request by the warden.'" *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)) (emphasis in original). "It is of no consequence when the BOP responds to an inmate's request — once '30 days from the *receipt* of such a request by the warden' has passed, the defendant may file in the district court." *Id.* at 339 (quoting same) (emphasis in original).

While Mr. Proctor may not have exhausted his administrative rights to appeal within the BOP, the present motion was filed more than six months after Warden Cobart received Mr. Proctor's request to file on his behalf. *See* Warden Correspondence, Docket No. 79-1. Therefore, Mr. Proctor has met his procedural requirement, and this motion is properly before the Court.

### B. Intervening Changes in Law

Mr. Proctor relies on the Supreme Court's decision in *Concepcion v. United States* to assert that intervening changes in law may be considered for a sentence reduction. Indeed, *Concepcion* found that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to *reduce a sentence* pursuant to the First Step Act."

597 U.S. 481, 500 (2022) (emphasis added). Yet, in *Concepcion*, the Supreme Court merely determined whether intervening changes in law can be considered *when calculating a new sentence* and not whether such changes may be considered *when determining whether a petitioner is eligible* for a sentence reduction in the first instance. *Rutherford*, 146 S. Ct. at 1333. This issue is directly addressed in *Rutherford*. There, the Supreme Court found that sentencing disparities created by *nonretroactive* changes in law – considered by themselves or in combination with other factors – are not extraordinary and compelling reasons making a petitioner eligible for a sentence reduction. *Rutherford*, 146 S. Ct. at 1335; *see also Brown v. United States*, 602 U.S. 101, 111 (2024) (citation omitted) ("ACCA requires sentencing courts to examine the law as it was when the defendant violated it, even if that law is subsequently amended."); *United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025) ("[A] non-retroactive change in the law is not an extraordinary and compelling reason to reduce a prisoner's sentence.").

Thus, the Court must determine whether these intervening changes in law, cited by Mr. Proctor, are retroactive. To determine whether an intervening change in law applies retroactively on federal collateral review, the Court must first ask whether that change announced a new rule of criminal procedure, as opposed to applying a settled rule. *Edwards v. Vannoy*, 593 U.S. 255, 264 (2021). Said plainly, the Court must determine whether the change is a new *substantive* rule or a new *procedural* rule. "New substantive rules alter 'the range of conduct or the class of persons that the law punishes.'" *Id.* at 276 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)). "Those new substantive rules . . . apply retroactively on federal collateral review." *Id.* "New procedural rules alter 'only the manner of determining the defendant's culpability.'" *Id.* (quoting *Summerlin*, 542 U.S. at 353). "Those new procedural rules . . . do not apply retroactively on federal collateral review." *Id.*

6

Mr. Proctor argues that *Rehaif v. United States* and *United States v. Wooden* apply retroactively and serve as extraordinary and compelling reasons warranting a sentence reduction. Because the Court has previously rejected Mr. Proctor's arguments under *Rehaif v. United States*, Docket No. 68 at 10-11, it does not consider that case's retroactivity. Instead, the Court reiterates why *Rehaif* remains inapplicable to Mr. Proctor. The Court will, however, conduct a retroactivity analysis with respect to Mr. Proctor's arguments under *United States v. Wooden*.

   1. *Rehaif v. United States*

Mr. Proctor asserts that he is afforded relief under *Rehaif v. United States*, 588 U.S. 225 (2019). He claims he was not informed that he was prohibited from possessing a firearm, rendering his guilty plea involuntary and in violation of the standard set forth in *Rehaif*. Proctor's Memorandum, Docket No. 80 at 5. This argument was previously considered in the Court's Order denying Mr. Proctor's motion to vacate under 28 U.S.C. § 2255. Docket No. 68 at 10-11. The Court will not entirely rehash *Rehaif*. Yet, for the avoidance of doubt, the Court rearticulates why Mr. Proctor's continued reliance on these arguments is misplaced.

As previously outlined by this Court:

> In *Rehaif*, the Supreme Court held that in 18 U.S.C. § 922(g), the word "knowingly" applies to the possession element in the statute, as well as the status "element." Thus, in order to convict a person under 18 U.S.C. 922(g), "the government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."

*Id.* at 10 (quoting *Rehaif*, 588 U.S. at 230-31, 237) (internal citations omitted). Mr. Proctor's Presentence Investigation Report conclusively demonstrates that *Rehaif* is inapplicable to his cause. There, he offers a written statement of admission, claiming "I am a convicted felon, I

7

possessed a firearm, I know it was against the law and I was not supposed to have that gun. But, I had it anyway." Docket No. 36 at 6 ¶ 25. Mr. Proctor had knowledge of his status as a convicted felon, knew that convicted felons could not possess firearms, yet had a firearm in his possession. Thus, his *Rehaif* argument lacks merit.

2. *Wooden v. United States*

Mr. Proctor next argues that he would not have received the ACCA enhancement if he were sentenced today under the interpretation offered in *Wooden v. United States*. In *Wooden*, the United States Supreme Court held that multiple convictions may be treated as a single occasion for purposes of the ACCA if those convictions arose from a single criminal episode. 595 U.S. 360, 363 (2022) ("Convictions arising from a single criminal episode . . . can only count once under ACCA."). Essentially, the convictions used to enhance a felon in possession of a firearm sentence under the ACCA must be distinct from each other and not occur during a single spree. Because *Wooden* alters "the range of conduct or the class of persons" whom may have their sentence enhanced under the ACCA, it is a change in statutory interpretation (i.e., substantive) and not a change in criminal procedure. *Summerlin*, 542 U.S. at 353. Therefore, the Court may apply *Wooden* retroactively upon collateral review. *See United States v. James*, 730 F. Supp. 3d 252 (E.D. La. 2024) (vacating a 2018 ACCA enhanced sentence under *Wooden*).

The Court now turns to the substance of Mr. Proctor's *Wooden* arguments. Mr. Proctor maintains that the three predicate offenses that caused his ACCA enhancement were committed during a single criminal episode or "spree." Proctor's Memorandum, Docket No. 80 at 3. His predicate offenses included three 2009 convictions in Hinds County Circuit Court for sale of cocaine. For these offenses, Mr. Proctor sold similar quantities of cocaine to the same

confidential informant, at the same location, and each sale occurred mere days from the one before.

"To determine whether predicate ACCA offenses occurred on different occasions," Courts may "consider a range of circumstances." *United States v. Valencia*, 137 F.4th 331, 335 (5th Cir. 2025) (quoting *United States v. Alkheqani*, 78 F.4th 707, 727 (5th Cir. 2023)) (cleaned up). "These [circumstances] include timing (such as whether the events consisted of 'an uninterrupted course of conduct' or whether they were 'separated by substantial gaps in time or significant intervening events'), 'proximity of location' (with crimes taking place further apart considered less likely to be parts of the same criminal event), and the 'character and relationship of the offenses' (such as whether they are 'more similar and intertwined' or 'share a common scheme or purpose')." *Alkheqani*, 78 F.4th at 727 (quoting *Wooden*, 595 U.S. at 369). In *Wooden*, the Supreme Court determined the defendant's predicate offenses occurred within a single criminal episode because they were "part and parcel of the same scheme, actuated by the same motive, [] accomplished by the same means[,]" and each offense "in some sense facilitated the next[.]" 595 U.S. at 369.

The Supreme Court expanded its *Wooden* analysis in *Erlinger v. United States*. 602 U.S. 821 (2024). The *Erlinger* decision notes that the fact-laden inquiry to determine whether occasions are separate for purposes of the ACCA is best-suited for jurors and not courts. *Id.* at 835. But "the Supreme Court's decision in *Erlinger* did not hold that its decision was retroactively applicable to cases on collateral review." *Jacobs v. United States*, No. 3:17-CR-305-L-1, 2025 WL 875489, at *3 (N.D. Tex. Mar. 19, 2025), *certificate of appealability denied*, No. 25-10529, 2025 WL 4688074 (5th Cir. Oct. 10, 2025). *Erlinger*, in fact, is nonretroactive. *Erlinger*, 602 U.S. at 859 n.3 (Kavanaugh, J., dissenting) (citing *Teague v. Lane*, 489 U.S. 288, 310 (1989)

9

(plurality opinion)) ("For any case that is already final, the *Teague* rule will presumably bar the defendant from raising [*Erlinger's*] new rule in collateral proceedings."); *see also Gann v. United States*, No. 3:19-CR-165-TAV-JEM-1, 2026 WL 886616, at *12 (E.D. Tenn. Mar. 30, 2026) (citing *Edwards*, 593 U.S. at 271) ("Because *Erlinger* announced a new procedural rule, as opposed to a new substantive rule, the Court concludes that *Erlinger* does not apply retroactively on collateral review."). Therefore, on collateral review, this separate occasions analysis is conducted by the Court and not a jury because *Erlinger* does not apply retroactively to Mr. Proctor's cause.

When operating outside the scope of *Erlinger*, courts within the Fifth Circuit must follow *Shepard v. United States*, 544 U.S. 13 (2005) to determine whether offenses occurred on different occasions. *Alkheqani*, 78 F.4th at 726. "Under *Shepard*, to determine whether [multiple] offenses occurred on different occasions, a court is permitted to examine only 'the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.'" *James*, 730 F. Supp. 3d at 257 (quoting *Shepard*, 544 U.S. at 16). "In addition to *Shepard*-approved documents, a court may consider a defendant's admissions." *Alkheqani*, 78 F.4th at 724 (quoting *United States v. Young*, 809 F. App'x 203, 210 (5th Cir. 2020)). "But 'a court cannot rely on a presentence investigation report's characterization of predicate offenses' . . . or on police reports[.]" *Id.* (quoting *Young*, 809 F. App'x at 210).

The Court relies on the following *Shepard* documents to inform its analysis: the grand jury indictment for Mr. Proctor's felon in possession charge, Docket No. 1, as well as the grand jury indictments for his 2009 sale of cocaine convictions; Mr. Proctor's entry of guilty plea

transcript, Docket No. 81-1; and his sentencing hearing transcript, Docket No. 81-2. The Court begins its analysis with an examination of the statutory definition.

Under the ACCA, a felon in possession of a firearm with "three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another . . . shall be fined under this title and imprisoned not less than fifteen years[.]" 18 U.S.C. § 924(e)(1). A "serious drug offense" means either "(i) an offense under the Controlled Substances Act (21 U.S.C. 801 *et seq.*), the Controlled Substances Import and Export Act (21 U.S.C. 951 *et seq.*), or chapter 705 of title 46 for which a maximum term of imprisonment of ten years or more is prescribed by law; or (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]"*Id.* at (e)(2)(A). Cocaine is a controlled substance as defined in section 102 of the Controlled Substances Act, and it is not disputed that Mr. Proctor's three state convictions are serious drug offenses for purposes of the ACCA. 21 U.S.C. § 802(6); 21 U.S.C. § 812, Schedule II(a)(4). What *is* disputed is whether those three sales occurred "on occasions different from one another." 18 U.S.C. § 924(e)(1).

The *Shepard* documents are quite bare with regard to the circumstances detailing Mr. Proctor's 2009 convictions. Yet, during Mr. Proctor's sentencing hearing, Judge Barbour found that the predicate offenses in question were three sales of cocaine that occurred on April 8th, April 14th, and April 20th, 2009. These facts alone are sufficient for the Court to make its separate occasions inquiry.

"[T]ime . . . can decisively differentiate occasions. Courts, for instance, have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart[.]'" *Valencia*, 137 F.4th at 335. (quoting *Wooden*, 595 U.S. at 370). It cannot be said that these three distinct sales, throughout a two-week period, occurred on one occasion. These facts are quite different from those present within *Wooden*. There, the defendant burglarized ten units in a storage facility in one night and during a single criminal episode. 595 U.S. at 367. Justice Kagan describes the rationale to treat those ten separate convictions as one occasion:

> Consider first how an ordinary person (a reporter; a police officer; yes, even a lawyer) might describe Wooden's ten burglaries — and how she would not. The observer might say: "On one occasion, Wooden burglarized ten units in a storage facility." By contrast, she would never say: "On ten occasions, Wooden burglarized a unit in the facility." Nor would she say anything like: "On one occasion, Wooden burglarized a storage unit; on a second occasion, he burglarized another unit; on a third occasion, he burglarized yet another; and so on." She would, using language in its normal way, group his entries into the storage units, even though not simultaneous, all together — as happening on a single occasion, rather than on ten "occasions different from one another."

*Id.* (quoting 18 U.S.C. § 924(e)(1)). Similarly, an observer would not say: "On one occasion, Mr. Proctor sold cocaine three times in a two-week period." While an occasion "may itself encompass multiple, temporally distinct activities[,]" the connections of fact between Mr. Proctor's predicate offenses are not so entangled as to render them part of a *single* event. *Id.*

The Court does not find Mr. Proctor's *Wooden* argument to be an extraordinary and compelling reason to justify eligibility for a sentence reduction.

### C. Arresting Officer Conviction

Mr. Proctor argues that the conviction of former Jackson Police Department Detective Anthony Fox is extraordinary and compelling. Mr. Fox was one of multiple officers who were present during Mr. Proctor's arrest. In fact, Mr. Fox was the officer who found the weapon that

implicated Mr. Proctor's felon in possession conviction. Proctor's Reply, Docket No. 85 at 6. Mr. Fox was later convicted for culpable negligence manslaughter, after beating a suspect, named George Robinson, to death. With respect to the case to which Proctor points, it is worth noting that the Mississippi Court of Appeals reversed Fox's conviction. See *Fox v. State*, 378 So.3d 1007 (Miss. Ct. App. 2024). That court concluded that "[t]he physical evidence [ ] supported Fox's theory that Robinson was accidentally, or by misfortune, injured[,] and that "[a] reasonable jury could conclude from the physical evidence, along with the eyewitness testimony of the police officers, that Robinson's injuries were the result of accident or misfortune." *Id*. at 1031-32.

The subsequently reversed conviction is not an extraordinary and compelling reason to justify a reduction in Mr. Proctor's sentence. Mr. Proctor's screams, that this conviction alludes to potential "foul play or misconduct in [his] case or the night of [his] arrest[,]" fall on deaf ears. Proctor's Memorandum, Docket No. 80 at 9. Fox's later reversed conviction is unrelated to Mr. Proctor's arrest. In fact, Mr. Proctor does not argue innocence, only that Mr. Fox's subsequent conviction is extraordinary and compelling to his cause. That argument finds no traction here.

Thus, there is no legitimate challenge to Mr. Proctor's arrest. The Court finds this argument is not an extraordinary and compelling reason warranting a sentence reduction.

**D. Jail Time Credit**

Mr. Proctor next contends that he is owed jail time credit for his time served for a state parole revocation and violation. *See* Proctor's Memorandum, Docket No. 80 at 7-9. Specifically, Mr. Proctor argues that the sentencing court neglected to identify whether his federal sentence should run concurrent or consecutive with his state sentence and, because of this, the BOP has

denied apportioning his state time to his federal sentence. For this reason, he seeks a sentence reduction under U.S.S.G. § 5G1.3 to account for the time he has served in state custody.

While Mr. Proctor was sentenced to serve 195-months in BOP custody, he has not demonstrated that his state parole revocation offense was "relevant conduct to the instant offense of conviction" – that is, his federal felon in possession offense. U.S.S.G. § 5G1.3(b). Only then would Mr. Proctor be entitled to a concurrent sentence. *Id.; see also United States v. Bickens*, No. 21-10392, 2022 WL 458383, at *2 (5th Cir. Feb. 15, 2022) ("Because Bickens was not entitled to a concurrent sentence, the decision not to run his federal sentence concurrently with his state parole revocation sentence does not constitute an extraordinary and compelling reason for a sentence reduction."). Also, "when the sentencing court makes no mention of a prior state sentence, the federal sentence shall run consecutive to the state sentence." *Jones v. Joslin*, 635 F.3d 673, 674 (5th Cir. 2011). But "[t]he BOP is responsible for calculating sentencing credit, and the proper vehicle for raising . . . a challenge to that calculation is a petition pursuant to 28 U.S.C. § 2241." *Moyer v. Wingfield*, No. 3:24-CV-696-CWR-ASH, 2025 WL 4948562, at *1 (S.D. Miss. Oct. 1, 2025), *report and recommendation adopted*, No. 3:24-CV-696-CWR-ASH, 2026 WL 1838856 (S.D. Miss. June 25, 2026) (quoting *United States v. Sonsteng*, No. CR-2:17-539, 2021 WL 2380054, at *1 (S.D. Tex. June 9, 2021)).

Should Mr. Proctor intend to pursue his U.S.S.G. § 5G1.3 arguments, he must do so in a habeas petition pursuant to 28 U.S.C. § 2241. Because another avenue exists to raise these claims, the Court does not find they warrant extraordinary and compelling reasons for a sentence reduction.

### E. Sentencing Disparities

Mr. Proctor cites U.S.S.G. statistics to demonstrate that his 195-month sentence is longer than the median sentences for many heinous crimes.[3] Proctor's Memorandum, Docket No. 80 at 15. He also argues that actors who commit similar crimes today would not have received the ACCA enhancement under *Wooden*. The Court has determined that Mr. Proctor's *Wooden* argument lacks merit. Thus, no extraordinary and compelling reason exists here.

### F. COVID Conditions

Next, Mr. Proctor argues that the pandemic-induced conditions within FCC-Yazoo City Medium Facility have rendered his sentence overly punitive. Proctor's Memorandum, Docket No. 80 at 14. Throughout the COVID-19 pandemic, and in the years afterwards, FCC Yazoo City experienced extreme staff shortages. *See* Tim Kauffman, Press Release, *Mississippi Federal Prison Understaffed, Overworked, and Risking Coronavirus Outbreak It Is Unprepared to Handle, Union Says*, AFGE (Oct. 6, 2020), https://www.afge.org/publication/mississippi-federal-prison-understaffed-overworked-and-risking-coronavirus-outbreak-it-is-unprepared-to-handle-union-says/. Mr. Proctor argues that the increased lockdown protocol, implemented to maintain the spread of COVID-19, created conditions that were not considered when he was given his 195-month sentence. Thus, he asserts serving the entirety of his sentence would now be overly punitive.

Some "courts have concluded that 'pandemic-induced conditions of confinement can constitute extraordinary and compelling circumstances warranting compassionate release,

---

[3] Mr. Proctor compares his sentence to the Fiscal Year 2020 median sentences for murder, sexual abuse, kidnapping, and robbery. Proctor's Memorandum, Docket No. 80 at 15 (citing U.S. Sent'g Comm'n Statistical Information Packet). What he fails to mention is that the sentence imposed was a within-guideline sentence for Offense Level of 30 and criminal history category of VI, which resulted in a range of 168 months to 210 months. Docket No. 36 at ¶ 75.

particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic.'" *United States v. Johnson*, 671 F. Supp. 3d 265, 281 (E.D.N.Y. 2023) (quoting *United States v. Oquendo*, No. 13-CR-357-1 (KPF), 2023 WL 199609, at *5 (S.D.N.Y. Jan. 17, 2023)). Others have determined that "the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances" because "those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person." *United States v. Boyso-Gutierrez*, No. 2:10-CR-1066, 2023 WL 348346, at *3 (S.D. Tex. Jan. 10, 2023) (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 291 (W.D. La. 2020)). Courts within the Fifth Circuit seem to agree that no extraordinary and compelling reason exists in experiencing pandemic-induced prison conditions. *See, e.g.*, *United States v. Johnson*, No. 3:17-CR-01569-DCG-1, 2023 WL 2671403, at *3 (W.D. Tex. Mar. 28, 2023) (When "harsh conditions of confinement stem from the [BOP's] attempts to limit the spread of COVID-19[,]" those conditions "cannot form the basis of extraordinary and compelling circumstances[.]").

The Court acknowledges that the conditions within FCC Yazoo City might have been daunting during the years Mr. Proctor cites. But, because those circumstances were applicable to and experienced by all inmates within the facility, no extraordinary and compelling reason exists.

### G. Rehabilitation

Mr. Proctor cites his rehabilitation as an additional reason for a sentence reduction. Indeed, Mr. Proctor has displayed a stellar record of rehabilitative growth throughout his incarceration. *See* Rehabilitation Efforts, Docket No. 79-2; *see also* Reference Letters, Docket No. 79-3. "Congress has permitted the Sentencing Commission to treat a defendant's rehabilitation

as a relevant consideration in granting compassionate release." *Fernandez*, 146 S. Ct. at 1303 (citing 28 U.S.C. § 994(t)). But "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Rutherford*, 146 S. Ct. at 1332 (quoting 28 U.S.C. § 994(t)); *see also Shkambi*, 993 F.3d at 391. Mr. Proctor should be proud of his rehabilitative efforts, but he cannot stand solely on rehabilitation. Therefore, this evidence is insufficient for the Court to grant a sentence reduction.

## IV.    Conclusion

The Court finds no extraordinary and compelling reasons that warrant a sentence reduction. Thus, the Court does not address the factors listed in 18 U.S.C. § 3553(a). For these reasons, Mr. Proctor's motion for a sentence reduction, Docket No. 79, is denied. Similarly, Mr. Proctor's motion requesting the status of his sentence reduction is denied as moot.

**SO ORDERED**, this the 22nd day of July, 2026.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE